**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:11 CR 01 |
| ) | |
| DARNELL CALLOWAY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Suppress Evidence, filed by Defendant, Darnell Calloway, on February 18, 2011 (DE #16). For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Defendant, Darnell Calloway, was charged in a 2-count indictment alleging a violation of 21 U.S.C. § 841(a)(1) for possessing with the intent to distribute marijuana (Count 1), and use of a firearm during a narcotics offense in violation of 18 U.S.C. § 924(c)(Count 2). Defendant moves to suppress the evidence seized and observations and statements made during the execution of the search warrant in this case. Specifically, Defendant argues that the search warrant was not supported by probable cause, because it was based upon uncorroborated information from an anonymous tipster. (*See* Mot. To Suppress Evidence, DE #16, pp. 3-

4.) In response, the Government argues that there was sufficient probable cause to support the search warrant - based in part on the anonymous tip, but also significantly based upon a narcotics dog alert and a trash pull. (Govt's Resp. To Def.'s Motion to Suppress, DE #19, p. 5.) After the Government filed its memorandum in response to Defendant's motion, the Court held an evidentiary hearing on this matter on March 7, 2011, at which Agent Shawn Ford from the Hammond Police Department testified. Additionally, this Court has reviewed the Affidavit in Support of a Search Warrant. Thus, the issues have been fully briefed and heard, and are ripe for adjudication. In making the following findings of fact, the Court considered the credibility of the witnesses.

FINDINGS OF FACT

The Hammond Police Department received a voicemail message on their phone line designated for narcotics complaints on November 15, 2010, stating that Darnell Calloway lived at 2201 Woodhollow Lane Apartment 2C in Hammond, Indiana, he had a black Chevrolet Trailblazer SS with Illinois temporary registration of 783L782, and possessed $60,000 in a safe in his room, cocaine, marijuana, and pills. The tipster also said that Calloway serves narcotics inside his truck, has scales, and guns. The complainant also stated that Calloway would not stop if pulled over or approached, and that he would shoot. Finally, the anonymous tipster said that there were

drugs, large sums of cash, and possibly guns in Calloway's residence.

According to the probable cause affidavit in this case, a Detective from the Hammond Police Department attempted to verify some of the information in the tip. The apartment at issue was rented to a person named Shabresha Guy, and the Chevrolet Trailblazer, which was witnessed at the apartment complex, was also registered to her.

The Detective obtained copies of an arrest report from a Chicago Police Department of an arrest on September 19, 2010, when Calloway was observed firing once in the air and a second time in the direction of a group of people. After a short pursuit, Calloway was stopped by the Chicago Police and found in possession of a Glock model 21 pistol.

On November 30, 2010, the Detective conducted surveillance of the Woodhollow Lane Apartment. He observed the last name Guy on the mailbox, and smelled a strong odor of marijuana coming from the apartment. From the parking lot, the Detective observed an African American male he believed to be Calloway driving the black Chevrolet Trailblazer described in the tip, who entered the apartment, and later exited with a white kitchen garbage bag with red draw string handles, and a plastic shopping-type bag. The African American male discarded the two bags into a dumpster, and left again in the Trailblazer. The detectives followed the

3

vehicle, where the driver met with another tall thin African American male who entered the vehicle, remained for approximately two minutes, and then exited. The detectives felt that the meeting was consistent with a narcotics transaction. The detective then returned to 2201 Woodhollow Lane, where they retrieved the discarded trash and found: one clear plastic sandwich type baggy that contained green vegetative substance that later field tested positive for the presence of marijuana, and the burnt ends of two hand-rolled cigars containing a green vegetative substance (commonly referred to as "blunts").

On December 1, 2010, the Detective requested a K-9 Officer to conduct a K-9 sniff in the common areas of 2201 Woodhollow Lane. The K-9 (a certified narcotics K-9), had a positive indication of a narcotics odor on the door of Defendant's apartment.

Based upon these facts, Task Force Agent Shawn Ford wrote an affidavit and applied for a search warrant from Magistrate Judge Andrew P. Rodovich on December 3, 2010. Judge Rodovich signed the search warrant, and it was executed on December 8, 2010. While going to execute the search warrant, Officer Ford saw Defendant and his girlfriend walking towards the Trailblazer parked in front of the apartment. As Defendant was getting into his vehicle, Agent Ford approached, asked Defendant to raise his hands, and step out of the vehicle. Agent Ford smelled a strong odor of marijuana coming from the vehicle. He also noticed a heavy object in the

4

right front pocket of Defendant's jacket, which he believed could be a gun. Agent Ford conducted a pat-down, and found a gun in Defendant's pocket.

At the same time, Agent Daniel Mitten saw in plain view in the vehicle a plastic ziplock bag that appeared to contain marijuana. It was later determined to contain approximately 232 grams of marijuana. Other agents executed the search of the apartment and recovered approximately 1,400 grams of marijuana and $17,628. After receiving his *Miranda* rights, the Defendant admitted that the marijuana in the car and apartment belonged to him. He also admitted to owning the gun because he was worried about being robbed.

CONCLUSIONS OF LAW

At this suppression stage, because the allegedly illegal search was done pursuant to a warrant, the defendant bears the burden of proving its illegality. *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985). "Where the police have acted pursuant to a warrant, the independent determination of probable cause by a magistrate gives rise to a presumption that the arrest or search was legal." *Id.* When an affidavit is the only evidence presented to the magistrate in support of a search warrant (as it was in this case with Magistrate Rodovich), the validity of the warrant rests upon the strength of the affidavit. *United States v.*

*Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Peck*, 317 F.3d at 756.

Defendant's main argument is that the affidavit in support of the search warrant improperly relied upon uncorroborated information from an anonymous tipster. The Defendant cites *United States v. Groves*, 559 F.3d 637, 639 (7th Cir. 2009), which in turn discusses *Florida v. J.L.*, 529 U.S. 266, 272 (2000), which held that "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." In *J.L.*, the Supreme Court addressed the anonymous tip issue, holding that the anonymous tip in that case lacked sufficient indicia of reliability to establish reasonable suspicion. In *J.L.*, an anonymous caller reported that a young black male at a certain bus stop wearing a plaid shirt had a gun. *Id.* at 268. The Court noted that there was not an audio recording of the tip, and that nothing was known about the informant. *Id.* Outside of the tip, there was nothing to cause the officers to suspect that J.L. was involved in any illegal activity. *Id.* The Court stated that:

> Anonymous tips... are generally less reliable than tips from known informants and can form

> the basis for reasonable suspicion only if
> accompanied by specific indicia of
> reliability, for example, the correct forecast
> of a subject's "'not easily predicted'"
> movements. The tip leading to the frisk of
> J.L. ... provided no such predictions, nor did
> it contain any other qualifying indicia of
> reliability.

*Id.* at 269 (citations omitted). Justice Kennedy, in his concurring opinion, indicated several factors that he believed might lend sufficient indicia of reliability to an anonymous tip, including a voice recording, a phone trace, or other information that would place the caller's anonymity at risk such that false informers could be punished. *Id.* at 274-76.

In this case, the anonymous tipster did indicate that Calloway had $60,000 in a safe in his identified room, cocaine, marijuana, and pills, and that he served narcotics inside his truck, had scales, and guns. This is quite different from the tip in *J.L.*, where the anonymous caller only told the police that a young black male in a plaid shirt standing at a particular bus stop would have a gun. *J.L.*, 529 U.S. at 268. The instant anonymous tipster provided much more detail than the one in *J.L.* Here, the tipster stated where Defendant lived, that he had a black Chevrolet Trailblazer SS with Illinois temporary registration of 783L782, and that there were drugs, large sums of cash, and possibly guns in Calloway's residence.

Most importantly, in *J.L.*, "[a]part from the tip, the officers

had no reason to suspect [the defendant] of illegal conduct." 529 U.S. at 268. This case is quite different, because in addition to the tip, the officers also had the narcotics dog alert and the trash pull to rely upon. "[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999) (citation omitted).

In *United States v. Limares*, the Seventh Circuit ruled that detection of drugs from a trained dog is reliable enough to provide probable cause. *United States v. Limares*, 269 F.3d 794, 798 (7th Cir. 2001); *see also United States v. Thomas*, 87 F.3d 909, 912 (7th Cir. 1996) ("[o]f course, once the dog reacted positively for narcotics, the officers had probable cause to obtain a search warrant for the suitcase."). In this case, once the dog alerted to the presence of narcotics outside of Calloway's door, probable cause existed to support the warrant.

Furthermore, the trash pull that occurred in this case also contributes to the probable cause for the search warrant. Here, the Detective recovered a clear plastic bag that tested positive for the presence of marijuana, and the burnt ends of two hand-rolled cigars containing marijuana. Defendant argues the presence of this small amount of marijuana is insufficient evidence, but this Court believes it goes toward the totality of the circumstances in this case. Courts in the Seventh Circuit have

held that trash pulls, like the one in this case, can contribute to probable cause. *See, e.g.*, *United States v. Coleman*, 149 F.3d 674, 677-78 (7th Cir. 1998) (finding trash pick-up from residence that recovered brown "tape-like" paper used to wrap quantities of cocaine, as well as cuts from plastic baggies and a white residue that later revealed the presence of cocaine supported probable cause for issuing search warrant); *Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 971 (7th Cir. 2003) (finding field tests done on burnt paper, foil, and other garbage which tested positive for cocaine "were enough for a reasonable officer to believe that probable cause existed to apply for a search warrant.").

Based upon the totality of the circumstances in this case (the anonymous tip plus the narcotics dog alert plus the trash pull), there was sufficient evidence to support the issuance of the search warrant. *See Coleman*, 149 F.3d at 678 ("A fact-finder must focus on the totality of the facts presented; there was ample evidence to support the magistrate's issuance of the warrant in this case."). Even assuming, *arguendo*, that the warrant was not supported by probable cause (and the Court has found the opposite), a facially valid warrant issued by a neutral, detached magistrate will be upheld if the police relied upon the warrant in good faith. *United States v. Leon*, 468 U.S. 897, 914, 922-23 (1984). In this case, the actions of the police officers in seeking out the warrant and

9

acting upon it, were sufficient to show their good faith reliance on the warrant. *See, e.g., Peck*, 317 F.3d at 758.

Once the agents went to Woodhollow Lane Apartment with the search warrant, it is undisputed that they could temporarily detain Defendant while they executed the warrant. In *Michigan v. Summers*, the Supreme Court held that it was proper for the police to detain a resident while the premises were searched (pursuant to a search warrant). *Michigan v. Summers*, 452 U.S. 692, 701-02 (1981). Supporting such a detention is "the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found . . . [and] the interest in minimizing the risk of harm to the officers." *Id.* at 702.

Moreover, the pat-down was proper. An officer may conduct a non-invasive pat-down search if he has reason to believe he is dealing with an armed and dangerous individual. *See United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997); *Terry v. Ohio*, 392 U.S. 1 (1968). In this case, the officer knew that Defendant had recently been arrested in Chicago for firing into a crowd, and then fleeing from the police. Additionally, the tipster had provided information that Defendant had a gun, would not cooperate, and would shoot. Moreover, when Officer Ford asked Defendant to exit the vehicle, he noticed a heavy object weighing down Defendant's right jacket pocket which appeared to be a gun. Officer Ford also smelled a strong odor of marijuana coming form the inside of the

vehicle. As part of the pat-down, the officers looked into Defendant's car and saw a quantity of marijuana in plain view. Thus, the gun that Defendant was carrying would have been discovered during a search incident to an arrest (either for the contraband found in the apartment or the marijuana in the vehicle). *See United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997) (reiterating plain view doctrine: (1) if officer is lawfully present; (2) an item not named in the warrant is in plain view of the officer; and (3) the incriminating nature of the item is immediately apparent - then the officer may seize the item without a warrant and it need not be suppressed at trial); *Nix v. Williams*, 467 U.S. 431, 443-44 (1984) (explaining inevitable discovery exception to the exclusionary rule).

CONCLUSION

For the aforementioned reasons, the Motion to Suppress Evidence, filed by Defendant, Darnell Calloway, is **DENIED**.

**DATED: March 8, 2011**                  /s/ RUDY LOZANO, Judge
                                                            **United States District Court**